UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BLUE CROSS & BLUE SHIELD OF
MISSISSIPPI, A MUTUAL INSURANCE
COMPANY                                                          PLAINTIFF

V.                                          CIVIL ACTION NO. 3:17-CV-338-DPJ-FKB

SHARKEY-ISSAQUENA COMMUNITY                                      DEFENDANTS
HOSPITAL, ET AL.

ORDER

Defendants in this ERISA case ask the Court to dismiss Plaintiff Blue Cross & Blue

Shield of Mississippi's ("BCBS") state-law claims against them, arguing that ERISA preempts

the claims and that the claims are insufficiently pleaded. Defendant Sharkey-Issaquena

Community Hospital ("Sharkey-Issaquena" or the "Hospital") also asks the Court to send Blue

Cross's case against it to arbitration. The Court concludes that the state-law claims are not

preempted, they are otherwise properly pleaded, and there is no arbitration agreement.

Defendants' motions to dismiss [9, 18] and Sharkey-Issaquena's Motion to Compel Arbitration

[20] are denied.

I.      Facts and Procedural History

In January 1995, Plaintiff Blue Cross and Defendant Sharkey-Issaquena entered into a

Participating Hospital Agreement ("the Contract") under which Sharkey-Issaquena agreed to

provide hospital services to individuals insured under Blue Cross-issued health-insurance plans.

Under the Contract, Blue Cross agreed to pay for services rendered by Sharkey-Issaquena in

accordance with a payment program attached to the Contract.

Blue Cross alleges that, beginning in February 2017, Sharkey-Issaquena began

submitting claims for payment for laboratory services that "were not ordered by a licensed

physician or other licensed health professional who has appropriate staff privileges at" Sharkey-Issaquena and/or that "were not performed at" Sharkey-Issaquena. Compl. [1] ¶ 13. Blue Cross explains this theory more fully in its responsive memorandum:

> Defendants used [Sharkey-Issaquena] as a vehicle to disguise fraudulent claims, which misrepresented that laboratory testing services were performed by and at the Hospital, when in truth, all testing services were performed by independent, non-network laboratories in San Antonio, Texas. Sun Clinical Laboratory, LLC, Mission Toxicology Management Company, L.L.C., Mission Toxicology, L.L.C., Mission Toxicology II, LLC, and John Does 1-10 (collectively the "Non-Hospital Defendants") completed, or caused to be completed, the laboratory tests at issue for patients from around the country who had no contact at all with [Sharkey-Issaquena] or its physicians. Then, Defendants fraudulently submitted claims to Blue Cross, misrepresenting that the tests had been performed at the Hospital, by the Hospital, and for the Hospital's patients ("Misrepresented Claims").

Pl.'s Mem. [28] at 2 (citations omitted). By doing so, Blue Cross says

> [t]he Defendants exploited the fact that Blue Cross has a network contract with [Sharkey-Issaquena] pursuant to which Blue Cross pays [it] significantly more for lab services provided at and by the Hospital than Blue Cross would normally pay for claims submitted directly by independent laboratories that are not part of Blue Cross's network, if Blue Cross would have been contractually required to pay at all.

*Id.* (citation omitted).

On May 4, 2017, Blue Cross filed this lawsuit against Sharkey-Issaquena and four off-site laboratories ("the Laboratories") it alleges performed the services for which Sharkey-Issaquena wrongfully submitted claims. It asserts a breach-of-contract claim against Sharkey-Issaquena; common-law fraud, civil-conspiracy, negligent-misrepresentation, and unjust-enrichment claims against the Laboratories; and claims for injunctive and declaratory relief under ERISA against all Defendants. The Laboratories and Sharkey-Issaquena filed motions to dismiss the state-law claims, and Sharkey-Issaquena also moved to compel arbitration. The matters raised in the motions have been well briefed, and the Court is prepared to rule.

II.     Analysis

A.     Motions to Dismiss

Defendants raise five arguments in their motions to dismiss:  (1) Blue Cross's state-law claims are preempted by ERISA, under either the conflict- or complete-preemption doctrine; (2) Blue Cross may not assert ERISA claims premised on its status as a fiduciary and personal-interest claims in the same lawsuit; (3) the state-law claims otherwise fail to state a claim under Rule 12(b)(6); (4) any self-funded plans for which Blue Cross provides administrative services are necessary parties whose absence requires dismissal under Rule 12(b)(7); and (5) Blue Cross lacks standing to pursue claims for damages on behalf of self-funded plans.  The Court will address each argument in turn.

1.     Preemption

Defendants say Blue Cross's state-law claims should be dismissed because ERISA preempts them.  "[T]here are two types of preemption under ERISA.  First, ERISA may occupy a particular field, resulting in complete preemption under § 502(a), 29 U.S.C. § 1132(a)."  *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999).  Second, conflict preemption exists when a state law "relates to" an employee benefit plan.  29 U.S.C. § 1144(a).  Defendants assert both.

a.     Complete Preemption

Where complete preemption occurs, a pleaded state-law claim "is considered, from its inception, a federal claim" for purposes of federal jurisdiction.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *accord Giles*, 172 F.3d at 337 (explaining that complete preemption "transmogrif[ies] a state cause of action into a federal one").  Complete preemption is thus "jurisdictional in nature rather than an affirmative defense to a claim under state law."  *Johnson*

*v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000) (quoting *Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493, 500 (5th Cir. 1999)).

In this case, Defendants seek dismissal. They have not filed a motion asking the Court to convert the state-law claims to federal claims for purposes of federal-question jurisdiction. Nor do they dispute that federal jurisdiction exists. As such, "a complete preemption analysis is not necessary." *Hall v NewMarket Corp.*, 747 F. Supp. 2d 711, 715 (S.D. Miss. 2017).[1]

      b.     Conflict Preemption

Conflict preemption is an affirmative defense to a state-law claim. *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 242 (5th Cir. 2006). Conflict preemption under ERISA originates in § 514(a) of the statute:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983).

Courts considering whether a state law "relates to" an ERISA plan must "look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." *Egelhoff*

---

[1] Even assuming Defendants had asked the Court to recharacterize the claims for purposes of jurisdiction, the Court would find that Defendants failed to satisfy either prong of the complete-preemption analysis. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (establishing two-prong test for compete preemption); *see also Aetna Health Inc. v. Health Goals Chiropractic Ctr. Inc.*, No. 10-5216, 2011 WL 1343047 (D.N.J. Apr. 7, 2011) (rejecting similar complete-preemption arguments).

*v. Egelhoff*, 532 U.S. 141, 147 (2001) (internal quotation marks and citations omitted). Those

objectives are memorialized in 29 U.S.C. § 1001(b), which states that Congress's goals were to

> protect interstate commerce and the interests of participants in employee benefit
> plans and their beneficiaries, by requiring the disclosure and reporting to
> participants and beneficiaries of financial and other information with respect
> thereto, by establishing standards of conduct, responsibility, and obligation for
> fiduciaries of employee benefit plans, and by providing for appropriate remedies,
> sanctions, and ready access to the Federal courts.

Based on these objectives, the Fifth Circuit has adopted "a two-part test when a

defendant argues that a claim is preempted by ERISA." *E.I. DuPont de Nemours & Co.*

*v. Sawyer*, 517 F.3d 785, 799–800 (5th Cir. 2008).

> A defendant pleading preemption must prove that: (1) the claim "addresses an
> area of exclusive federal concern, such as the right to receive benefits under the
> terms of the Plan; and (2) the claim directly affects the relationship among
> traditional ERISA entities—the employer, the plan and its fiduciaries, and the
> participants and beneficiaries."

*Bank of La.*, 468 F.3d at 242 (quoting *Mayeux v. La. Health Serv. and Indem. Co.*, 376

F.3d 420, 432 (5th Cir. 2004)). And "[b]ecause ERISA preemption is an affirmative

defense, [Defendants] bear the burden of proof on both elements." *Id.*

Defendants have not directly addressed these elements. Instead, they offer

generalized arguments based on the phrases "relate to" and "connection with." *See Shaw*,

463 U.S. at 97. While the term "relate to" is 'broadly worded" and "clearly expansive," it

"cannot be taken to extend to the furthest stretch of its indeterminacy, or else for all

practical purposes pre-emption would never run its course." *Egelhoff*, 532 U.S. at 146

(internal quotation marks and citation omitted). So to, "connection with" must not be

given "an uncritical literalism that would make pre-emption turn on infinite connections."

*Id.* at 147 (internal quotation marks and citation omitted); *see Shaw*, 463 U.S. at 97.

Thus, "preemption does not occur if the state law has only a tenuous, remote, or

peripheral connection with covered plans, as is the case with many laws of general applicability." *Martco P'ship v. Lincoln Nat. Life Ins. Co.*, 86 F.3d 459, 462 (5th Cir. 1996) (citation omitted and punctuation altered).

With these balances in place, the Court turns to Defendants' arguments. Defendants begin by observing Blue Cross's averment that its state-law claims "are so related to the federal claims that they form part of the same case or controversy." Defs.' Mem. [10] at 5; *accord* Def.'s Mem. [19] at 5. True enough, Blue Cross pleaded the standard for supplemental jurisdiction under 28 U.S.C. § 1367 in the jurisdictional section of the Complaint. *See* Compl. [1] ¶ 10. But Defendants have not provided any authority suggesting that the test for supplemental jurisdiction supplants the Fifth Circuit's test for conflict preemption under ERISA. And as discussed below, it is not uncommon for a plan administrator to bring ERISA claims on behalf of plan beneficiaries while also pursuing state-law claims for its own non-ERISA losses arising from the same case or controversy. *See, e.g., Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. Of Bethesda, LLC*, No. 14-2376, 2015 WL 4394408 (D. Md. July 15, 2015).

Defendants next say that Blue Cross's state-law claims "relate to" ERISA plans "because [they] are premised on the very existence of the employee benefit plans." Defs.' Mem. [10] at 6; *accord* Def.'s Mem. [19] at 6. In other words, "if [Blue Cross] did not administer the benefit plans, it could not have brought state law causes of action against the Defendants." Defs.' Mem. [10] at 6; *accord* Def.'s Mem. [19] at 6. Again, Defendants have not explained how this argument addresses either prong of the Fifth Circuit's test for conflict preemption.

Moreover, the Fifth Circuit has rejected conflict preemption even when the disputed contract would not have existed but for an ERISA plan. In *Bank of Louisiana*, the plaintiff bank

entered three contracts with defendant Aetna—an administrative-services contract, whereby Aetna administered the bank's self-insured employee benefit plan; a stop-loss insurance policy that paid certain benefit claims from the underlying ERISA plan; and an extension of the stop-loss policy. 468 F.3d at 239−40. The bank sued Aetna, claiming that it breached the stop-loss extension by improperly delaying the processing and payment of benefit claims and by failing to honor other provisions of the stop-loss agreement. *Id.* at 240. Applying the first element of the conflict-preemption defense, the Fifth Circuit concluded that any alleged breach of the stop-loss agreement related to Aetna's processing of the benefit claims would touch an area of exclusive federal concern and was therefore preempted. *Id.*; *see also id.* at 244 n.13. But other claims— like failing to reimburse the bank for amounts paid under the plan during the relevant time—did "not challenge any act or omission by Aetna in processing benefit claims or administering the Plan; rather, they call into question . . . the scope of the stop-loss extension." *Id.* at 243. So even though the stop-loss extension existed because of the ERISA plan, certain claims did not "relate to" that plan.

Likewise, other courts have rejected similar arguments that preemption exists when an ERISA plan forms the basis of the relationship between the plaintiff and the defendant. *See, e.g.*, *Conn. Gen. Life Ins. Co.*, 2015 WL 4394408, at *17 (finding that insurer's fraud-based claims for billing malfeasance did not "relate to" ERISA plans); *Aetna Life Ins. Co. v. Huntington Valley Surgery Ctr.*, No. 2:13-CVv-3101, 2014 WL 4116963, at *6−7 (E.D. Penn. Aug. 20, 2014) (holding that carrier's billing-fraud claims were not conflict preempted despite existence of underlying ERISA plans); *Ass'n of N.J. Chiropractors v. Aetna, Inc.*, No. 09-3761, 2012 WL 1638166, at *6 (D.N.J. May 8, 2012) (holding that "a number of cases . . . have held that ERISA does not completely preempt claims brought by an insurer who sues a provider for fraudulent or

negligent misbilling") (collecting cases). Like the carriers in these cases, Blue Cross's state-law claims are not based on the underlying ERISA plans.

In reply, Defendants take a slightly different approach, arguing that they "cannot defend against [Blue Cross]'s state law claims without a review of ERISA-governed plan provisions." Defs.' Reply [16] at 7. That argument would have sway if the state-law claims have "a connection with or reference to such a plan." *Shaw*, 463 U.S. at 97. But beyond their conclusory arguments, Defendants have not shown how the ERISA plans are relevant to Blue Cross's state-law claims. In fact, none of the underlying ERISA plans appear in this record. *See, e.g.*, *Aetna Life Ins. Co.*, 2014 WL 4116963, at *6 (holding that preemption argument was premature because defendant had not yet reviewed the ERISA plans). And again, Defendants have not adequately addressed their burden under the Fifth Circuit's two-element test.

Finally, Defendants argue that Blue Cross incorporates by reference the allegations regarding breaches of ERISA plans into its state-law counts. *See*, *e.g.*, Def.'s Reply [31] at 2. Blue Cross does employ this standard pleading technique in its Complaint. But the alleged state-law breaches relate to the Contract and common law, and, as stated above, Defendants have not met their burden of showing that those claims relate to an ERISA plan. That observation remains true even though the Contract itself incorporates the various ERISA plans. *See Bank of La.*, 468 F.3d at 242–44 (finding no conflict preemption where defendant insurer allegedly breached stop-loss insurance contract that covered certain claims from employee-benefit plan).

Turning then to the actual test, the Court concludes that Defendants failed to show Blue Cross's state-law claims are preempted. To begin, the state-law claims for breach of contract, fraud, civil conspiracy, negligent misrepresentation, and unjust enrichment do not address areas of exclusive federal concern such as the right to receive benefits under the terms of the Plan.

Instead, they are based on duties the parties owed each other under the Contract (Sharkey-Issaquena) or state law (the Laboratories). *See, e.g.*, *Bank of La.*, 468 F.3d at 243 (finding preemption for benefits-related-claims-handling decisions but no preemption for claims based on disputes over stop-loss coverage).

As for the second element—whether the claims directly affect the relationship among traditional ERISA entities—"the critical distinction is not whether the parties to a claim are traditional ERISA entities in some capacity, but instead whether the relevant state law affects an aspect of the relationship that is comprehensively regulated by ERISA." *Id.* To this end, "the critical determination is whether the claim itself created a relationship between the plaintiff and defendant that is so intertwined with an ERISA plan that it cannot be separated." *Id.* (internal quotation marks and citation omitted).

*Bank of Louisiana* is again instructive. There, the Fifth Circuit concluded that the first breach-of-contract claim regarding Aetna's claims-handling decisions was preempted because it related to Aetna's role as an ERISA fiduciary. *Id.* at 242. But other breach-of-contract claims— like those disputing whether the stop-loss extension covered claims during a certain time period—were not related to Aetna's fiduciary duties and were only tangentially related to the ERISA plan. *Id.* at 243–44. As such, those breach-of-contract claims did not affect the relationship among traditional ERISA entities and were not preempted. *Id.*

Here, Blue Cross was not acting as a plan fiduciary with respect to the specific breaches it alleges—claims seeking damages for *Blue Cross's losses* in paying claims that it says were not covered by the Contract or were fraudulently submitted. *See id.* at 243 (holding that "a party may qualify as an ERISA fiduciary with regard to some claims but not others"). And it is beyond dispute that Defendants were not ERISA entities as to these alleged breaches. *See id.*

Other courts have reached the same result. *See, e.g.*, *Arapahoe Surgery Ctr. v. Cigna Healthcare, Inc.*, No. 13-CV-3422, 2015 WL 1041515, at *7 (D. Colo. Mar. 6, 2015) (finding no conflict preemption because Cigna's state-law claims were "based on whether [the providers, who were not ERISA entities,] made material misrepresentations"); *Advanced Surgery Ctr. Of Bethesda, LLC*, 2015 WL 4394408, at *17 (rejecting conflict preemption and noting that "[a]lthough some of the allegations in the complaint reference ERISA plans, the core allegations of misconduct that the Cigna entities have pled for their state law causes of action relate to the fraudulent or negligent misrepresentations"); *Conn. Gen. Life Ins. Co. v. True View Surgery Ctr.*, 128 F. Supp. 3d 501, 517 (D. Conn. 2015) (rejecting conflict preemption because "[t]he crux of the state fraud claim is the surgical centers' alleged misconduct—the fraudulent billing practices—and not the terms of the ERISA-governed plans"); *United Healthcare Servs., Inc. v. Sanctuary Surgical Centre*, 5 F. Supp. 3d 1350, 1362–63 (S.D. Fla. 2014) (finding no conflict preemption because "this case involves state law tort claims lodged solely against non-ERISA entities"); *Aetna Life Ins. Co.*, 2014 WL 4116963, at *6–7; *Fustok v. UnitedHealth Grp., Inc.*, No. 12-CV-787, 2013 WL 2189874, at *5–6 (S.D. Tex. May 20, 2013) (applying Fifth Circuit case to similar billing-fraud claim and finding no conflict preemption); *Ass'n of N.J. Chiropractors*, 2012 WL 1638166, at *6; *Health Goals Chiropractic Ctr., Inc.*, 2011 WL 1343047, at *5; *see also* Pl.'s Mem. [14] at 14 n.3 (collecting additional cases). The Court concludes that the state-law claims are not conflict preempted. The motions to dismiss are denied as to the preemption arguments.[2]

---

[2] Defendants cite three Fifth Circuit cases that found conflict preemption because the state-law claims "relate[d] to" ERISA plans. *See Lee v. EI. DuPont deNemours & Co.*, 894 F.2d 755 (5th Cir. 1990); *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290 (5th Cir. 1989); *Degan v. Ford Motor Co.*, 869 F.2d 889 (5th Cir. 1989). But in each case, the plaintiff sought "to recover benefits defined by their former employer's ERISA plan, benefits to which they would have

2.      Ability to Bring State-Law and ERISA Claims

Defendants argue that Blue Cross "cannot assert federal claims as an ERISA fiduciary and also assert state claims on its own behalf." Defs.' Mem. [10] at 10 (capitalization omitted); *accord* Def.'s Mem. [19] at 12. But the Fifth Circuit has explained that "a party may qualify as an ERISA fiduciary with regard to some claims but not others." *Bank of La.*, 468 F.3d at 243 (citing *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000)). And suits of this nature are fairly common. *See Arapahoe Surgery Ctr., LLC*, 2015 WL 1041515, at *7 (rejecting conflict-preemption defense and stating that "the availability of a remedy under ERISA is not relevant to the preemption analysis") (citation and internal quotation marks omitted); *see also Advanced Surgery Ctr. of Bethesda, LLC*, 2015 WL 4394408, at *15−19 (finding no preemption in carrier's billing-fraud case that included state-law and ERISA claims); *True View Surgery Ctr.*, 128 F. Supp. 3d at 517 (same); *Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*, No. 2:13-CV-2378, 2014 WL 1028351, at *6 (E.D. Cal. Mar. 14, 2014) (same). Defendants have not offered compelling contrary authority.

3.      Failure to State a Claim

Defendants say that Blue Cross's state-law claims against them do not survive scrutiny under Rule 12(b)(6). Under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d

---

become entitled but for a misrepresentation by their employer, during their employment, on which they relied to their detriment." *Lee*, 894 F.2d at 757. As the damages were based on the plan benefits, the Fifth Circuit found that ERISA preempted the state-law claims. This case is different. Blue Cross is not seeking benefits under a plan, it seeks damages for payments made based on alleged fraud and breach of contract.

322, 324 (5th Cir. 1999) (per curiam)).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. at 555 (citations and footnote omitted).  The Court will address each state-law claim separately.

a.      Breach-of-Contract Claim against Sharkey-Issaquena

Sharkey-Issaquena says Blue Cross's breach-of-contract claim "fails to address how [it] breached" the Contract.  Def.'s Mem. [19] at 14.  In response, Blue Cross explains that Sharkey-Issaquena

> breached the Contract by knowingly authorizing the Non-Hospital Defendants to bill Blue Cross in [Sharkey-Issaquena's] name, by submitting or authorizing the submission of claims for Hospital Services when they were not for Hospital Services, and by accepting the contractual rate of payment for millions of dollars' worth of those Misrepresented Claims.

Pl.'s Mem. [28] at 7.

> Turning then to the Contract, the parties dispute the following provisions:
>
> 2.12    "Hospital Service(s)" means those services and supplies provided by HOSPITAL to Subscribers and other patients.  Hospital Services do not include services performed by an organization or facility not itself licensed by the state as a general acute hospital.
>
> . . . .
>
> 3.1     HOSPITAL shall provide to Subscribers, insofar as facilities of HOSPITAL permit, Hospital Services which are Medically Necessary when such services are ordered by a licensed physician or other licensed health professional who has appropriate staff privileges at HOSPITAL.

. . . .

4.1     PLAN agrees to make its payments due under this Agreement directly to HOSPITAL for Covered Services provided to each Subscriber.

. . . .

5.1     PLAN shall pay directly to HOSPITAL for and in behalf of Subscriber the Payment Amount calculated in accordance with the terms of Plain's Participating Hospital Policies and Procedures and the Payment Program, as set forth in Attachments A and B, for Services rendered by HOSPTIAL to Subscriber.

. . . .

4.1.11  Network Hospital should make every effort to file an accurate and complete claim.  A corrected claim should only be submitted when there will be a change in the allowable amount or payment amount.  If the Network Hospital needs to refile a corrected claim, Network Hospital must submit corrected claim within twelve (12) months after payment of original claim.  Only one corrected claim will be accepted.

Contract [25].

Collectively, these provisions at least suggest that Blue Cross did not agree to pay for services provided by off-premises laboratories using Sharkey-Issaquena's billing code.   More specifically, the billing requirements state that the Hospital "is responsible for providing all information necessary to adjudicate [a] claim[,]" and is "to make every effort to file an accurate and complete claim."  Contract [25] ¶ 4.1 & Attachment A ¶ 4.1.11.  The allegations of the Complaint must be viewed in the light most favorable to Blue Cross, and in that light, they at least state a plausible breach of paragraph 4.1.11.  Sharkey-Issaquena's motion to dismiss the breach-of-contract claim is therefore denied.[3]

_____

[3] The Hospital may be correct that Blue Cross could have done a better job identifying the specific contract provisions in its Complaint.  But the Complaint did provide the factual basis for the claim, and Blue Cross incorporated the disputed Contract.  At the Rule 12(b)(6) stage, the "standard simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements."  *In re S. Scrap Material Co., LLC*, 541 F.3d 584,

Alternatively, Sharkey-Issaquena argues that paragraph 3.1 of the Contract is procedurally and/or substantively unconscionable. That provision provides: "HOSPITAL shall provide to Subscribers, insofar as facilities of HOSPITAL permit, Hospital Services which are Medically Necessary when such services are ordered by a licensed physician or other licensed health professional who has appropriate staff privileges at HOSPITAL." Contract [25] ¶ 3.1.

Unconscionability is "an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 715 (Miss. 2002). "Procedural unconscionability may be proved by showing a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." *Citigroup Global Markets, Inc. v. Braswell*, 57 So. 3d 638, 645 (Miss. Ct. App. 2011). On the other hand, "[s]ubstantive unconscionability is present when there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement." *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 521 (Miss. 2005), *overruled on other grounds by Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695, 706 (Miss. 2009). At this stage in the proceedings, the Court cannot say that paragraph 3.1 of the Contract is procedurally or substantively unconscionable.

Starting with procedural unconscionability, Sharkey-Issaquena says that the Contract was "presented [to it] on a 'take it or leave it basis,'" and that "[t]he disparity in bargaining power

---

587 (5th Cir. 2008) (citation and internal quotation marks omitted). And for the reasons stated, the Court finds that Blue Cross has pleaded a plausible breach-of-contract claim. Even if it had not, the Court would grant Blue Cross leave to amend. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).

between [Blue Cross] and [it,] a small hospital . . . effectively precluded any sort of negotiation or voluntary assent to the subject provision." Def.'s Mem. [19] at 18. But none of these alleged facts are apparent from the face of the Complaint or the Contract. Sharkey-Issaquena's procedural-unconscionability argument is not appropriate at the Rule 12(b)(6) stage and is premature.

Looking to substantive unconscionability, Sharkey-Issaquena says paragraph 3.1 "provides [Blue Cross] with absolute discretion in denying any claim submitted." Def.'s Mem. [19] at 18. But paragraph 3.1 does no such thing; it merely obligates Sharkey-Issaquena to provide "Hospital Services" to Blue Cross subscribers. Moreover, Blue Cross's ability to deny submitted claims is not related to its claim that Sharkey-Issaquena has submitted improper claims under the Contract. Sharkey-Issaquena has not demonstrated unconscionability at this stage.

        b.        Fraud and Negligent-Misrepresentation Claims against the Laboratories

The Laboratories say Blue Cross's fraud and negligent-misrepresentation claims against them are deficient under Federal Rules of Civil Procedure 9(b) and 12(b)(6). To state a claim for fraud under Mississippi law, a plaintiff must plead:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth (8) his right to rely thereon, and (9) his consequent and proximate injury.

*In re Miss. Medicaid Pharm. Average Wholesale Price Litig.*, 190 So. 3d 829, 835 (Miss. 2015) (quoting *Franklin v. Lovitt Equip. Co., Inc.*, 420 So. 2d 1370, 1373 (Miss. 1982)). To state a claim for negligent misrepresentation, a plaintiff must plead:

> (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the

negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct or proximate result of such reasonable reliance.

*Holland v. Peoples Bank & Trust*, 3 So. 3d 94, 101 (Miss. 2008).

The Laboratories contend that Blue Cross has not provided "any information relating to the individual instances of alleged fraud," including "the identity or quantity of these supposedly fraudulent transactions," thus "mak[ing] it impossible for [the Laboratories] to identify what specific conduct was involved in this alleged fraudulent scheme." Defs.' Mem. [10] at 13; *see also id.* at 16–17 (addressing negligent-misrepresentation claim).

The Court concludes that Blue Cross has sufficiently pleaded plausible fraud and negligent-misrepresentation claims. Blue Cross has alleged that every bill submitted by the Laboratories using Sharkey-Issaquena's billing credentials misrepresented that the services rendered were covered and reimbursable under the Contract. *See* Compl. [1] ¶¶ 13–15. Under these circumstances, that allegation provides sufficient information to put the Laboratories on notice of the complained-of conduct. *See Fustok*, 2013 WL 2187874, at *5 & n.1 (citing *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). Blue Cross has satisfied its burden at the pleading stage as to the fraud and negligent-misrepresentation claims.

c.      Civil-Conspiracy Claim against the Laboratories

The Laboratories say that because Blue Cross's civil-conspiracy claim "is entirely predicated on its fraud claim," the alleged pleading deficiencies in the latter similarly doom the former. Defs.' Mem. [10] at 14. But the Court has found Blue Cross's fraud claim sufficiently pleaded.

The Laboratories also assert that Blue Cross "has not provided sufficient factual information to support its conspiracy claim." *Id.* In particular, they say Blue Cross's "allegation

regarding a purported 'meeting of the minds' between the parties to the alleged conspiracy" is lacking. *Id.* at 15. "Under Mississippi law, '[a] conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully.'" *Gallagher Basset Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004) (quoting *Levens v. Campbell*, 733 So. 2d 753, 761 (Miss. 1999)).

Blue Cross says—and the Court agrees—that "the Complaint clearly and repeatedly states that the Defendants agreed on how to carry out their deceptive plan." Pl.'s Mem. [14] at 21; *see, e.g.*, Compl. [1] ¶ 15 (alleging that Sharkey-Issaquena "entered into a contract with one or more entities and/or individuals through which it is allowing these entities and/or individuals to submit claims to Blue Cross for payment using [Sharkey-Issaquena]'s name and billing information even though the laboratory services were not performed at or by [Sharkey-Issaquena]"); *id.* ¶ 17 (explaining that Sharkey-Issaquena "is being 'reimbursed' by one or more of the third party entities for this 'arrangement'"); *id.* ¶ 46 (alleging that the Laboratories "agreed and conspired to engage in a course of conduct, jointly and severally, to commit a fraud on Blue Cross by submitting claims to Blue Cross for payment for laboratory services under [Sharkey-Issaquena]'s name and using [its] billing number which were fraudulently misrepresented as having been performed at [Sharkey-Issaquena], ordered by a licensed physician or other licensed health professional who has appropriate staff privileges at [Sharkey-Issaquena], and performed at [Sharkey-Issaquena], for the purpose of receiving payments from Blue Cross to which they were not entitled"). Blue Cross's allegations survive the Rule 12(b)(6) challenge.

d.    Unjust-Enrichment Claim against the Laboratories

Finally, the Laboratories argue that the unjust-enrichment claim is insufficiently pleaded. "Unjust enrichment applies to situations where there is no legal contract and the person sought to

be charged is in possession of money or property which in good conscience he should not return but should deliver to another." *Beasley v. Sutton*, 192 So. 3d 325, 332 (Miss. Ct. App. 2015) (internal quotation marks and citations omitted). As with Blue Cross's other state-law claims against the Laboratories, the Complaint states sufficient facts to survive the Rule 12(b)(6) motion: it alleges that the Laboratories wrongfully obtained money from Blue Cross in payment of insurance claims that were improper and fraudulent. And Blue Cross seeks return of those funds. The motion to dismiss is denied as to the unjust-enrichment claim.

4.    Rule 12(b)(7)

Defendants next argue that "[a]ny self-funded plans and their administering employers for which [Blue Cross] seeks to recover are necessary persons who must be joined to [Blue Cross's] claims under [Federal] Rule [of Civil Procedure] 19(a)." Defs.' Mem. [10] at 18; *accord* Def.'s Mem. [19] at 19.

Rule 19(a) requires joinder of a person "who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction" if:

(A)  in that person's absence, the court cannot accord complete relief among existing parties; or

(B)  that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i)  as a practical matter impair or impede the person's ability to protect the interest; or

(ii)  leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Dismissal under Rule 12(b)(7) for failure to join an indispensable party is within the Court's discretion. *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003).

Defendants claim that the self-funded plans are necessary parties under both sections of Rule 19(a)(1). First, under Rule 19(a)(1)(A), they say that "complete relief cannot be accorded

in the[] absence" of the self-funded plans given that "[t]he plan-administering employers bear ultimate responsibility for the payment of benefits under their . . . plans, and, consequently, any recovery of alleged overpayments made to Defendants arising out of those plans would belong 'in good conscience' to them, not [Blue Cross.]" Defs.' Mem. [10] at 20; *accord* Def.'s Mem. [19] at 20. Second, Defendants say Rule 19(a)(1)(B) is met because "[t]he absence of the self-funded plans and their administering employers . . . creates a substantial risk of future liability, litigation, and vexation between Defendants and them, including a substantial risk that Defendants could incur double, multiple, or otherwise inconsistent obligations." Defs.' Mem. [10] at 19–20; *accord* Def.'s Mem. [19] at 20.

Notably, Defendants do not identify with particularity any self-funded plans they believe should be joined as a party. Nor do they show whether those plans are subject to service of process in this Court.

"When faced with a motion under Rule 12(b)(7), the district court will decide whether the absent person should be joined as a party. If it decides that question in the affirmative, the district judge will order the individual or entity who is not before the court brought into the action, if such joinder is feasible." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1359 (3d ed. 2016); *see Nat'l Cas. Co. v. Gonzales*, 637 F. App'x 812, 814–15 (5th Cir. 2016). Only where joinder is not feasible does the Court consider "whether to proceed without him or to dismiss the action." *Id.* "[T]he burden is on the party moving under Rule 12(b)(7) to show the nature of the unprotected interests of the absent individuals or organizations and the possibility of injury to them or that the parties before the court will be disadvantaged by their absence." *Id.* And "'courts are reluctant to grant motions to dismiss of this type.'. . . 'In general, dismissal is warranted only when the defect is serious and cannot be

cured.'" *Cooper v. Kliebert*, Nos. 14-507, 15-751, 2016 WL 3892445, at *6 (M.D. La. July 18, 2016) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1359 (3d ed. 2016)).

On the record before it, the Court cannot say Defendants have met their burden to establish that any self-funded plans are necessary parties under Rule 19 or that they cannot be joined so as to warrant dismissal. And Blue Cross argues that, even if any self-funded plans are necessary parties under Rule 19, dismissal is not warranted because the defect is not incurable: Defendants' "concerns can be dealt with by simply omitting the claims paid by self-insured plans from the damages calculation." Pl.'s Mem. [14] at 9. At least on this record, the Court would agree. The motions under Rule 12(b)(7) are denied.

### 5. Standing

In a somewhat related argument, the Laboratories contend that Blue Cross lacks standing to pursue claims arising out of payments made on behalf of self-funded plans. "[T]he 'irreducibile constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Blue Cross says that it has standing to bring all of the claims asserted in this case as it has suffered an injury in fact as a result of Defendants' conduct: its "administrative agreements contractually obligate it to administer and pay claims appropriately, whether fully insured or self-insured, and Blue Cross bears a risk of loss if inappropriate claims are paid." Pl.'s Mem. [14] at 7. Assuming Blue Cross actually pleaded claims based on self-funded plans, the Court concludes that it has met its burden to establish standing at this stage. *See Lujan*, 504 U.S. at

561; *see also Conn. Gen. Life Ins. Co.*, 128 F. Supp. 3d at 509 (finding standing as to carrier's billing-fraud claims regarding self-funded plans because carrier "expended its own time and resources in investigating the surgical centers' billing practices"); *Arapahoe Surgery Center, LLC*, 2015 WL 1041515, at *3 (finding standing for carrier's billing-practices claims regarding self-funded plans); *Aetna Life Ins. Co.*, 2014 WL 4116963, at *4 (finding standing at the pleading stage based on allegation that insurer was directly harmed by defendants' conduct including harms resulting from payments relating to self-funded plans).

B.      Motion to Compel Arbitration

Finally, Sharkey-Issaquena says that Blue Cross is obligated to arbitrate its claims against it pursuant to the Contract. "When adjudicating a motion to compel arbitration, [a court] first must determine whether the parties agreed to arbitrate the dispute in question." *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 293 (5th Cir. 2005). In making this determination, a court "must decide: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (internal quotation marks and citation omitted).

Here, Sharkey-Issaquena points to article VII of the Contract, which provides:

7.1  PLAN and HOSPITAL agree to meet and confer in good faith to resolve any problems or questions that may arise under this Agreement.

7.2  In the event any problem or question is not satisfactorily resolved, either party *may* appeal as provided in Plan's Participating Hospital Policies and Procedures set out in Attachment A hereto.

7.3  The appeal decision shall be final and binding on both PLAN and HOSPITAL, but shall have no effect, relevance, or bearing on any decision involving a Participating Hospital other than HOSPITAL.

Contract [25] ¶¶ 7.1–7.3 (emphasis added).

It is axiomatic that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation marks and citation omitted). And though the Contract broadly requires the parties "to meet and confer in good faith to resolve any problems or questions that may arise" thereunder, it contains no provision mandating arbitration. Indeed, paragraph 7.2 says the parties "may" appeal. Contract [25] ¶ 7.1.

Moreover, the Appeal Procedures set forth in the Policies and Procedures attached to the Contract state:

**APPEAL PROCEDURES**

A Network Hospital may electronically submit an appeal for the following items with regard to the Percent of Charge program:

1.   Utilization Management decisions

2.   Medical Necessity decisions

3.   Audit Reviews

4.   Reimbursement Calculations

**Appeal of Utilization Management/Medical Necessity Decisions**

The Network Hospital may request an appeal of Utilization Management and Medical Necessity decisions using the procedures outlined in the "Appendix A - Utilization Management Program", which is part of this manual.

**Appeal of Audits Reviews**

The Network Hospital may appeal a determination made during an Audit Review. The Network Hospital must notify BCBSMS, as directed by BCBSMS, within thirty (30) days of the payment/adjustment on the appealed claim. This notification and any added information the Network Hospital provides will be reviewed by BCBSMS.

**Appeal of Reimbursement Calculations**

The Network Hospital may appeal the pricing of a claim if it feels the payment on the Remittance Statement is incorrect based upon the appropriate rates and related time period. The Network Hospital must notify BCBSMS via the online

submission of appeals process located on *my*BlueProvider, within one year of the process date of the disputed claim. This appeal will be reviewed by Provider Appeals and its decision shall be final.

*Id.*, Attachment A ¶ 4.2. So while it permits *Sharkey-Issaquena* to submit various appeals under the Contract, it contains no provision permitting *or requiring* Blue Cross to engage in alternative dispute resolution as to any issues it may have with Sharkey-Issaquena.

Significantly, and as Sharkey-Issaquena acknowledges, the Contract does not use the word arbitrate or any derivative thereof. And it contemplates litigation, explaining that "[i]n the event that either Plan or Hospital initiate any action, suit, or proceedings to enforce the provisions of this Agreement, each party shall bear its own costs and attorney fees." *Id.* ¶ 9.5.

Sharkey-Issaquena provides no binding authority suggesting that the Contract requires arbitration. The Court therefore concludes that the parties never agreed that Blue Cross would be required to arbitrate claims like the ones it asserts against Sharkey-Issaquena here. Sharkey-Issaquena's motion to compel arbitration is denied.[4]

III.    Conclusion

The Court has considered all arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, the Court denies Defendants Mission Toxicology II, LLC, Mission Toxicology Management Company, L.L.C., Mission Toxicology, L.L.C., and Sun Clinical Laboratory, LLC's Motion to Dismiss [9]; Defendant Sharkey-

---

[4] Sharkey-Issaquena does cite two 1940s cases out of New York state court as well as an unpublished decision of the Michigan Court of Appeals. Def.'s Reply [30] at 2–3 (citing *Mencher v. B & S Abeles & Kahn*, 84 N.Y.S.2d 718 (1948); *In re Hub Indus.*, 54 N.Y.S.2d 106 (1944); *Kohler Oil Co. v. B & D Party Store, Inc.*, No. 273243, 2007 WL 4548416 (Mich. Ct. App. Dec. 27, 2007)). Those cases say the word "arbitrate" is not necessary "if the court is able to determine from the agreement that it was the intention of the parties that the controversy would be settled by arbitration." *In re Hub Indus.*, 54 N.Y.S.2d at 108. Even if those cases controlled, the Court would still find that the Contract here does not show the parties' clear intent to settle the instant dispute by arbitration.

Issaquena Community Hospital's Motion to Dismiss [18]; and its Motion to Compel Arbitration and Dismiss [20]. The parties are directed to contact the chambers of United States Magistrate Judge F. Keith Ball within 10 days of the entry of this Order to set the case for a case-management conference.

**SO ORDERED AND ADJUDGED** this the 13th day of December, 2017.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE